**ISLE OF HOPE HISTORICAL ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS and Isle of Hope Marina, Defendants-Appellees.**

No. 81–9051
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 29, 1981.
Rehearing Denied June 25, 1981.

Walter C. Hartridge, John Gregory Odom, Savannah, Ga., for plaintiff-appellant.

Kenneth C. Etheridge, Savannah, Ga., Anthony Liotta, Acting Asst. Atty. Gen., Kay L. Richamn, Dirk D. Snel, Appellate Section, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for Corps of Engineers.

John G. Kennedy, Don Smart, Savannah, Ga., for Isle of Hope Marina.

Before HILL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

The judgment of the District Court is AFFIRMED based upon the Order, in the nature of a memorandum opinion, entered on November 14, 1980 and appended hereto.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ISLE OF HOPE HISTORICAL
ASSOCIATION, INC.

      Plaintiff

      V.

UNITED STATES ARMY CORPS
OF ENGINEERS and ISLE OF
HOPE MARINA

      Defendants

CV480–15

## ORDER

This case is before the Court pursuant to provisions of the Administrative Procedure Act, 5 U.S.C. §§ 702, 703, and National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.* Plaintiff, Isle of Hope Historical Association, a corporation organized under the Georgia Nonprofit Corporation Code, seeks revocation of certain permits issued by the defendant, Corps of Engineers of the United States Army to the defendant Isle of Hope Marina. Plaintiff also seeks recall of a document styled *Final Environmental Impact Statement on Department of The Army Permit Application By Isle of Hope Marina* April, 1978, for additional findings and analysis consistent with certain objections it offers against the present report.

Two hearings have been conducted in this Court with respect to the present case. On October 14, 1980, the Court entertained oral argument from all sides on plaintiff's motion for a Temporary Restraining Order preventing the defendant Marina from proceeding with construction under the permits here at issue until the merits of the dispute could be addressed. Finding that the plaintiff did face potential irreparable injury in the absence of injunctive relief and that a proper showing for such relief had been made, the Court entered a temporary restraining order October 14. This order enjoined further construction by the Isle of Hope Marina, while allowing some measures to preserve work that had already been carried out. At this time the Marina was first made a formal party to the litigation, and a second hearing on the merits of plaintiff's claim was scheduled for October 29, 1980. An accelerated briefing schedule was also ordered to facilitate this hearing.

On October 29, the Court entertained extensive oral argument from all sides. The Court also received written submissions from the parties both before and after this hearing. Upon consideration of these arguments and the relevant supporting exhibits now before the Court, it is my opinion that the plaintiff has failed to make out a showing that the Environmental Impact Statement here challenged is deficient in any of the particulars which plaintiff has pointed to, or that the permits at issue were not properly granted.

I therefore conclude that the temporary restraining order now in effect should be dissolved, and that preliminary and permanent injunctive relief should be denied. The bases for these determinations are outlined below.

*Background*

The present action involves a planned expansion of boat repair and maintenance facilities operated by the defendant Isle of Hope Marina, on the Skidaway River, Isle of Hope, Chatham County, Georgia. The Marina and its predecessors date back to the late 19th Century, when the area also included a small amusement park, and other public recreational facilities. Reflecting the traditional use of this area the Chatham County Zoning Code adopted in 1962 classified the area occupied by the Marina as "T–B" (tourist-business), while classifying the surrounding area "R–1" (residential) to reflect the presence of private homes, many of which also date from the late 19th Century. The plaintiff, Isle of Hope Historical Association, Inc., is a nonprofit corporation made up of owners of residential property in the immediate vicinity of the Marina, including certain of these homes of some historical or architectural significance.

In 1974, the defendant Marina began taking legal steps to gain necessary permits for a significant expansion of its facilities. The Marina planned construction of several covered docks and two straddle crane piers for removing vessels from the water to permit hull repairs. A corrugated steel structure was also to be built to enlarge and improve repair facilities at the Marina. On February 4, 1974, the Marina filed application with the defendant Corps of Engineers for a permit (0 74 OYN 002851) to allow the proposed improvements in docking facilities. A second permit (074 OYN 003004) was requested July 24, 1974. Public notices were issued regarding both these requests within about thirty days of the applications.

Subsequently, interested Federal, state and local government agencies were advised of the permit applications. Most of these parties made no objection to the proposed work. However, some administrative accommodations were necessary. The State of Georgia required that a permit be obtained from the Georgia Marshlands Protective Agency because the improvements would involve filling of lands between high and low watermarks which are owned by the state. After some initial objection, permits were obtained and notice of this approval given to the Corps.

On October 31, 1974, the Corps specifically requested, as part of the comment process, that Chatham County, the local government having jurisdiction over the Marina, advise concerning "the relationship of (the permit request) to any zoning actions or other functions under the purview of the local government." Defendant Corps of Engineers' Exhibit 1–12. Chatham County officials advised by a letter of November 11, 1974 that "the plans were inspected . . . by the Chatham County Building Official and the Zoning Administrator and found to be in compliance with existing county requirements." Corps Exhibit 1–15.

On July 30, 1975 the Savannah District Engineer approved an environmental assessment and executed a "statement of findings" requiring development of an Environmental Impact Statement (EIS). The EIS was ordered because the Marina permit requests were viewed as highly controversial even though they did not amount to "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). After two years in preparation, the Draft Environmental Impact Statement (DEIS) was completed and made available for public inspection in April 1977. The DEIS was also submitted to and subsequently approved by the Environmental Protection Agency.

On May 18, 1977, the Corps of Engineers held a public hearing on the DEIS. Following this hearing and receipt of other comments, a final EIS was completed. Comments were also entertained with respect to this document. Of particular significance was a letter of August 31, 1978 in which parties substantially similar to those comprising the present plaintiff offered objections closely resembling those now before this Court. In response to these comments, the Corps again asked Chatham County to examine the project in light of zoning and other appropriate considerations. Corps Exhibit 1–32. Again the Corps was advised that the project was in conformity with

county policy. A "response and clarification" to the comments followed. Corps Exhibit 1–33. Finally, in November 1978, the permits were approved and issued.

Subsequently, plaintiff filed a suit in Chatham County Superior Court to enjoin issuance of building permits for the Marina. Plaintiff also objected to the Marina's request for extension of its Marshland Protection Agency permit. After a hearing in December 1978, the State Board of Natural Resources affirmed extension of the permit issued to the Marina. In December 1979, plaintiff's prayer for injunctive relief based on zoning regulations was denied by Superior Court Judge Frank Cheatham.[1] The present suit was filed on January 22, 1980 to challenge the sufficiency of the EIS.

### Plaintiff's Objections

Plaintiff has presented in oral and written form four somewhat over-lapping objections to the EIS at issue here. Plaintiff contends first that the EIS contains a "fatal defect" in that it fails to discuss and analyze inconsistencies between the Marina expansion plan and zoning and land use policies in Chatham County. See 40 C.F.R. § 1502.16(c). Plaintiff makes specific reference here to a "professionally-printed, 35 page official document of that authority (the Metropolitan Planning Commission) pursuant to a request of the Chatham County Commission." The document, *Land Use Element Chatham County Georgia, 1977,* suggests that development of the Marina "should be limited to the area presently zoned for this use." The report is not specifically discussed in the EIS. Plaintiff also makes particular reference to an apparent slight encroachment of the proposed Marina expansion into land zoned "R–1" by the county. Both these facts, plaintiff contends, amount to inconsistencies with local land use policies which demand much closer scrutiny than the EIS provides.

Along much the same lines, plaintiff argues secondly that the EIS is defective in that it fails to include a "detailed and accurate analysis of the county zoning ordinance." This contention is accompanied by an extended review such as plaintiff argues the Corps should have conducted. In particular, plaintiff alleges that the classification currently applicable to the Marina, "T–B," is designed to "provide and encourage" commercial water recreation areas. Plaintiff argues that, far from promoting mere "recreation," the disputed plan contemplates a major marine repair facility which has no proper place in a "T–B" zone. Instead, plaintiff contends that the classification "W–I" (waterfront industry) is appropriate to the Marine scheme, which in any event should not be permitted in the present "T–B" and "R–1" area.

Third, plaintiff contends that the EIS is defective because it fails to discuss the taking of public wetlands which is necessarily involved in the defendant Marina's plan to fill in certain marshland along its riverfront property. Plaintiff contends that "at the very least" the Corps should have solicited an opinion from the Georgia Attorney General and included some discussion of the problem in the EIS to allow the public an opportunity to "scrutinize this potential taking."

Finally, plaintiff contends broadly that the EIS suffers from a "pervasive subjective bias." Plaintiff argues that the failure of the Corps to consider the three arguments already listed reflects an attempt to ignore important facts so that a pre-existing conclusion in favor of the expansion may be supported. As evidence of this bias, plaintiff points to "inadequate consideration" given to the "aesthetic impact" of the proposed improvements. Plaintiff contends that photographs contained in the EIS have

---

1. Both defendants have argued at length that plaintiff should be estopped from raising the issue of conformity with zoning regulations based upon this prior litigation. Since I find that even were plaintiff properly able to raise the issue, no relief would be proper in the present suit, it will not be necessary to consider this defense. However, the Court would point out that, if plaintiff's argument against estoppel is sound, it would seem to permit further litigation of the zoning questions in state court. As will become apparent presently, the state forum seems a far more appropriate place for consideration of the matter than this Court.

been carefully angled to understate the actual visual impact of new structures. Plaintiff also contends that the Corps unduly "summarized and minimized" objections to the Marina expansion while carefully detailing positive sentiment.

## Analysis

■ The role of this Court in reviewing a disputed EIS is strictly limited. The Court has no warrant to substitute its own notion of how the Corps should have weighed the evidence in determining whether to issue the disputed permits. *Vermont Yankee Nuclear Power Corporation v. NRDC*, 435 U.S. 519, 535, 98 S.Ct. 1197, 1207, 55 L.Ed.2d 460 (1977). The function of the federal court is only to determine whether plaintiff has established "by a preponderance of the evidence, rather than by a *prima facie* showing of deficiencies that the EIS ... was inadequate." *Sierra Club v. Morton*, 510 F.2d 813, 818 (5th Cir. 1975).

■ The Fifth Circuit has announced three criteria for determining the adequacy of an EIS: (1) whether the agency in good faith objectively has taken a hard look at the environmental consequences of a proposed action and alternatives; (2) whether the EIS provides detail sufficient to allow those who did not participate in its preparation to understand and consider the pertinent environmental influences involved; and (3) whether the EIS explanation of alternatives is sufficient to permit a reasoned choice among different courses of action. *Save Our Sycamore v. Metropolitan Rapid Transit Authority*, 576 F.2d 573 (5th Cir. 1978).

■ In applying these criteria, the Court is of course mindful of the statutory requirement that the EIS be a "detailed statement." 42 U.S.C. § 4332(2)(C). However, the Court must also avoid placing extreme or unrealistic burdens on the compiling agency. Compliance is to be judged against a "rule of reason." *Morton, supra*, at 819. Issuance of permits is to be undisturbed so long as the decision was not "arbitrary and capricious." *Id.* In short, the Court is to follow a pragmatic standard which requires good faith objectivity but avoids "fly specking." *Lathan v. Brineger*, 506 F.2d 677, 693 (9th Cir. 1974). When these criteria are applied to the objections here argued, it is apparent that the plaintiff has failed to make out any showing of "fatal defect" in the Isle of Hope EIS or the Corps' decision to issue the disputed permits.

Plaintiff's objections to the treatment accorded county land use planning and zoning regulations must be considered in the light of the federal-state-local relationship contemplated by NEPA. It is obvious from a reading of this statute that the federal agency developing an EIS is expected to *cooperate* and *consult* with local government. See, e. g. *Ford v. Train*, 364 F.Supp. 227 (W.D.Wis.1973). The agency is required to solicit the "comments and views of appropriate Federal, State and local agencies." 42 U.S.C. § 4332(2)(C). The federal agency is further expected to consider carefully inconsistencies with local policy, in as much as this policy can be considered to reflect what local residents acting through their elected representatives consider desirable. *Capital Park and Planning Commission v. United States Postal Service*, 487 F.2d 1029, 1036 (D.C.App.1973). Accordingly, as plaintiff suggests, NEPA does require closer scrutiny of measures which conflict with local interests as expressed through appropriate governmental entities, though certainly it is understood that "not all deviations from local zoning will necessarily rise to the level of affecting the 'quality of the human environment' within the fair meaning of that term." *Capital Park, supra*, at 1035.

However, when this requirement is considered in light of the cooperative relationship NEPA contemplates, it is apparent that plaintiff has failed to suggest any real deficiency in the defendant Corps of Engineers' treatment of local zoning and land use plans. With respect to the alleged failure to consider inconsistencies adequately, it should first be noted that the planning document plaintiff relies on has not been approved by the Chatham County Commis-

sion or any other governmental entity. Plaintiff's own brief quotes the requirement that agencies discuss "any inconsistency of a proposed action with any *approved* state or local plan. . . ." 40 C.F.R. § 1506.2(d), (emphasis added). Since the *Land Use Element* has not been approved, it was entirely proper and accurate for the EIS to note merely that "programs are being developed and have not adopted specific policies which are applicable to the proposed work. It would be premature and inappropriate to make any assumptions and judgments before these plans have been officially adopted." EIS 9.76. Certainly this Court cannot conclude that the EIS is lacking in objectivity or detail because it does not consider an unadopted plan under regulations which plainly apply only to approved policies.

Neither can the Court find any fault with the defendant's failure to consider the alleged inconsistencies between zoning regulations and the Marina improvements. The record clearly shows that the defendant consulted with county officials on zoning policies. The Corps was specifically informed by public officials that the proposed expansion did not conflict with the desires of local residents as expressed in local public policy. Moreover, when plaintiff's arguments were brought to the Corps' attention, this conclusion was rechecked with local officials who again assured that no inconsistencies existed. It is apparent then that the Corps was fully justified in concluding that "[i]nasmuch as the Marina is a commercial water recreation facility . . . it is considered to be consonant with T–B zoning." EIS, at 3.03. The Corps did not fail to discuss inconsistencies adequately because, in light of its thorough and proper consultation with local officials, there was no basis for concluding that any such inconsistencies were present.

In sum, plaintiff's objection to the EIS treatment of the alleged inconsistencies with local policy reflects a fundamental misapprehension of the role of the federal agency in preparation of an EIS. NEPA contemplates a relationship of cooperation between local and federal authorities. An obvious and indeed central aspect of this relationship must be respect for the sovereignty of local authorities. For the Corps in this case to follow planning documents which the county had not adopted or to engage in independent analysis of inconsistencies which those specifically charged with zoning enforcement did not find would make the Corps in effect a planning and zoning review board. NEPA surely intended to confer no such power or responsibility on federal agencies.[2]

Of course, plaintiff's objection to the lack of detailed discussion of county zoning regulations is similarly flawed. The proper function of the Corps was to assess the environmental impact of the Marina expansion, not to act as a zoning interpretation or appeal board." "[T]he EIS was not intended to be a substitute community planning device." *Concerned About Trident v. Rumsfeld,* 555 F.2d 817, 829 (D.C.App.1977). Plaintiff does not suggest any significant alternative which the EIS failed to consider. Nor does plaintiff suggest any legitimate task of a *federal* agency which the Corps failed to fulfill. The EIS contains detailed findings with respect to local environmental impact. Noise levels, navigational hazards, visual impact, water quality, and numerous other considerations which are within the proper purview of the Corps were considered. No objection to these findings is now before the Court. The absence of review of matters within the prop-

---

**2.** In this connection, it is interesting to note that several cases cited by the parties involve EIS's which apparently describe local planning policy in language and detail much like that in the report here at issue. Thus in *Hanly v. Kleindienst,* 471 F.2d 823, 833 (2nd Cir. 1971), the Court states as follows: "The GSA further represents that the building will conform to all local code, use and zoning, and attaches a letter from the New York City office of Lower Manhattan Development dated August 4, 1971, indicating approval of the Annex. . . ." There is no suggestion in this case that such reliance is inappropriate. Nor has plaintiff cited any case where it was held that a federal agency could not rely on the representations of appropriate local officials.

er control of local authorities does not render these findings inadequate.

Plaintiff's remaining two objections can be dealt with more summarily. Suggestion that the Corps was derelict in not soliciting an opinion from the Georgia Attorney General with respect to the possible taking of lands is plainly without merit in light of the extensive treatment this question received through an appropriate state agency. The Department of Natural Resources was apprised of the problem and met it in a way satisfactory to the public interest it represented. Interested parties were afforded ample opportunity to challenge the department's action and in fact availed themselves of this opportunity. To suggest now that the Corps was under some obligation to resurrect this dispute in the EIS again only blurs a proper distinction between federal and state roles that was in no way contemplated by the cooperative approach which NEPA incorporates.

Plaintiff's final objection to the alleged "pervasive subjective bias" of the EIS is too nebulous to permit easy analysis. However, the Court surely cannot conclude that the Corps failed to proceed in good faith based on the scant evidence plaintiff marshalls on this point. Plaintiff's comments do not appear to have been slighted, especially in view of the Corps' special effort to reconfirm its understanding of local zoning policy after plaintiff's letter of August 31, 1978 was received. The Corps also appears to have given adequate treatment to visual and other considerations in the EIS. Certainly the mere fact that the Corps found the benefit in use of Marina facilities by the general public sufficient to outweigh the displeasure of area residents, who often have their own private docks, does not show any obvious bias or bad faith. On the contrary, it is fairly supported by the record and clearly a sound basis for issuance of the permits in question.

## CONCLUSION

As I have already indicated, the Court has a very limited role in the present case. It is not my function to determine the wisdom of the Corps' action or any possible alternative policy. The Court is charged simply with assessing whether the EIS is adequate in light of the purposes it and NEPA were intended to serve. It is apparent from close analysis of plaintiff's objections that they attempt to place an improper if not impossible burden on the defendant Corps of Engineers. NEPA does not make the Corps into a zoning appeal board or a county planning commission. It does require the Corps to cooperate with local officials who are themselves charged with expressing public sentiment in these areas. It is apparent from the present record that the Corps did consult with local officials and that it accorded their determinations proper deference.[3] The Corps prepared an EIS which provided a close objective appraisal of all issues suggested by this consultation. The decision to grant the permits was rationally supported by this record. The Corps is required to do no more.

The Court therefore concludes that the temporary restraining order now in effect should be lifted and plaintiff's prayer for further relief denied.

So Ordered this 14 day of November 1980.

/S/   B. Avant Edenfield
Judge, United States District Court.
Southern District of Georgia.

---

**3.** There is of course nothing in this order which would preclude plaintiff's seeking relief either before or against these local bodies. The Court's holding here relates only to the sufficiency of the EIS and the propriety of the Corps' reliance on local officials in developing it. I express no opinion on the accuracy of the determinations made by these authorities.